The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to hear argument in our first case, number 15-2143, Palmetto Prince George's operating LLC v. NLRB. Counsel? May it please the Court. Your Honors, my name is Jennifer Fowler-Hermes, and I'm here on behalf of the petitioner, cross-respondent, Palmetto Prince George. The NLRB Regional Director's determination that Prince George failed to meet its burden of establishing that the charge nurses at the facility exercised independent judgment in disciplining and responsibly directing the CNAs at its facility, and thus it failed to establish that they were statutory supervisors, is not supported by substantial evidence. When evaluating whether charge nurses possess supervisory authority, the focus is whether the employer has vested the authority in the charge nurse to undertake one of the 12 indicia of supervisory status. This Court has repeatedly found that the focus is not on the frequency with which this authority is utilized. Prince George provided significant testimony and evidence to show that its charge nurses did indeed exercise independent discretion in disciplining the CNAs that are under their authority. The Regional Director, in his opinion, recognized the following facts. First, that this employer maintains a progressive disciplinary policy that is in effect and utilized at the facility. As discussed later, this is an incredibly important fact. Second, this policy applies to the CNAs at the facility, and these CNAs are part of a collective bargaining unit. That the charge nurses initiate this disciplinary process by completing a disciplinary action record, also known as a DAR. Contrary to what was briefed in the response brief submitted to this Court, the Regional Director found that only management team members and charge nurses use these forms. This is an important fact because the Regional Director concluded that since everyone has a responsibility to report misconduct or poor performance, that by completing the disciplinary action forms, they were doing nothing other than their reporting requirement. However, there is a distinction, and that distinction is that the disciplinary action forms initiate the disciplinary process, and they're only completed by management team and charge nurses, by those with supervisory authority. Can the charge nurses impose a punishment, a discipline, in and of themselves, without any supervisory, anybody above them, signing on? The final discipline is imposed by the DON. Instead, the charge nurses initiate the process in accordance with the disciplinary policy. It looks like there are lots of rules and policies here. It looks like the record is full of them, just about everything. I think the area that I was most interested in is when the managers go home at night, and your argument is at that point the charge nurses exercise independent judgment. But if they have these many rules and regulations, the law seems to be that if all you're doing is following a preconceived plan, then you're not exercising independent judgment. That's not what's happening at this facility, despite the policies. But if that was the case, we would affirm. Is that correct? Yes, Your Honor, with respect to discipline, not necessarily with respect to the other supervisory indicia. In this case, the most independent judgment in the disciplinary process is actually exercised by the charge nurse, the individual that's initiating the process. Taking a look at the policy, which was provided to the hearing officer, you will see that the disciplinary policy is very specific. It's divided into three categories. Each category carries with it a specific disciplinary action that should be implemented. Each of those categories has numbered infractions. So if you have a certain infraction, it's already set up in terms of what category violation it is, and what the ultimate discipline would be. The only change to that is whether or not in the personnel file there have been previous disciplinary actions in the previous 12 months. If that's so, according to the disciplinary policy, then the discipline to be imposed can be increased. Thereby, when a charge nurse decides to initiate the process by completing a disciplinary action form, as opposed to just informally counseling, she is exercising independent discretion. This Court, in the Beverly cases from 1998 and 1999, as well as the Glenmark case, has recognized that in moving forward with discipline, this is considered effectively recommending discipline. Moreover, the NLRB has also recognized this distinction. In Berthold Nursing Care Center, the NLRB's opinion discussed the difference in cases where there is indeed a progressive disciplinary policy and those where there is not. It found in that case that the forms that were completed by the charge nurses laid the foundation under the disciplinary system for the imposition of discipline. In reaching this decision, the NLRB relied on another one of its cases in reprogressive services. In that case, the NLRB specifically rejected the proposition that authority to discipline is when an act automatically leads to an action affecting employment. The NLRB recognized that when there is a progressive disciplinary policy in place, effective recommending of discipline is the authority to decide whether to handle and affect the disciplinary issue, either by bringing it to the attention of upper management or by providing informal counseling. A good example of this can be found in the discipline of Shawanda Page, which was attached as part of Exhibit 13 to the hearing transcript. In that particular disciplinary action, a CNA was written up for sleeping on the job and the charge nurse sent her home. It was not automatic. That must be one and only example you have, though, right? Actually, there were three different examples provided. For how many years? I don't even know what the years were in terms of what the hearing officer was looking at. Would that make a difference to you? No, Your Honor. This Court has reviewed... Well, are you familiar with the case that we decided about a year ago, the Pactel case? Yes, Your Honor. I am familiar with the Pactel case. Well, it seemed to embrace the NLRB's revised view of what's required here and a view that superseded that in the earlier cases involving nursing homes. Well, Pactel was not a nursing home case. I understand that, but it was an NLRB case. Yes, it was. And in regard to discipline, in that case, the individual that was being looked at as whether or not he was a supervisor was someone that had to write up every single instance where he felt there was a potential safety violation. He did not have the authority to exercise independent judgment to decide whether or not to complete those write-ups. So even accepting the new framework established by Oakwood that was set forth by the NLRB, in that case, clearly, this Court found that that was not sufficient to establish disciplinary... that the individual was exercising disciplinary authority as set forth in the Act. With respect to... responsibly directing the other indicia that's before the Court today, in that particular instance, again, he did not have the ability to exercise independent judgment. That's a manufacturing plant. And what the individuals that were underneath him were doing were the same thing day in and day out. That's distinguishable from the case at hand, where the purpose of this facility is to provide health care to up to 148 individuals. There has to be someone on site that has the ability to recognize where there's a problem, to recognize when the procedures and the policies and the rules are not being followed, and then to have the authority to direct those underneath them to adjust their behavior and the health care they're providing in a way that the patients at the facility are receiving the best health care possible. Let me ask you a question. What is the hierarchy among the nurses at night? The highest person at the facility are the charge nurses, whether that be an LPN or an RN. How many of those are there? It depends on which floor and which unit. Each unit can have between one to two charge nurses for one to five CNAs. To consider the fact, and there was a lot made by the NLRB with respect to the ratio of supervisors to CNAs, but the reverse is the more telling of that argument, and that is if these individuals do not have the ability to responsibly direct those that are underneath them, then there is no one at the nursing home facility that has the ability, if there is a code, to evaluate exactly what needs to be done to direct the other individuals that are there providing health care on how to do that and to take care of it. Instead, they would have to pick up a phone and call the DON or the ADON and say, what do I do? That doesn't seem so extraordinary to me because when you're in the hospital, the nurse and their nurses that are, I'm sure, extremely competent, they won't give you an aspirin without calling for some doctor to write the prescription. But this is different from a hospital in that you don't have... Sure, but the whole idea of having to call... You posed the whole example of you couldn't do anything without calling, and it's similar in that respect. You couldn't give any medical services without calling, isn't it? No, it's not similar. It can be similar in some respects, but ultimately what takes place here is that the charge nurses have the ability to assess the situation if there's a code, if there is a patient that needs care. Whether or not it's when anyone else is at the facility, they have the ability to immediately respond and to make sure that the health care is properly being provided. The DON testified during the hearing that she expects the charge nurses to handle things, that she only receives maybe three calls a month, if that. And with that being said... She just told us this isn't a hospital. These are people that are There may not be as many calls, but again, it's not necessarily the frequency with which the authority is being exercised, but the fact that the authority is there. There are situations at nursing homes where individuals do code, and at that point, once they are stabilized, they are transferred to a hospital, and that's where the hospital then takes over. In this instance, because of the way that it's set up, it's only reasonable to have those situations. Furthermore, the NLRB's repeated, the director's repeated focus on the frequency goes against the established precedent of this court. It's not about the frequency with which the authority is there, but instead it's about the fact that they indeed have the authority to discipline, and they have the authority to responsibly direct. The responsible direction in Oakwood that was laid out added some additional hurdles for employers to meet in terms of providing evidence, and one of those was corrective action. In this case, there was more than sufficient evidence that corrective action could be taken by the charge nurses. What evidence do you have that the people who are working particularly at night need more than minimal supervision, that their responsibilities are so ordinary and routine that it would be rare that they would have some kind of special problem they'd have to deal with? The patients are individuals with different types of health care. We're not talking about an assembly line where you have a widget, and what the individual's doing is exactly the same. The D.O.N. did testify that when... Yes, she testified that it was the responsibility of the charge nurse to make sure that the facility was, that their floors were effectively being operated, and that proper health care was provided, and in addition, that if something came up, that they would have the ability to handle it. A lot of the individuals that are at nursing home facilities are there because they cannot care for themselves. Now, is that a full and fair rendition of what her testimony on this was? The testimony of the D.O.N.? Yes. I would be surprised in management if that was all she testified to. Well, the D.O.N. actually testified that they are the first line of authority at the health care facility, that they are responsible for making sure that the CNAs comply with the parameters of their certification. I guess, going back to Judge Traxler's question about, is there evidence in the record of instances where they were not able to, where they did, in fact, exercise some special authority? In other words, were these patients asleep? Were these people asleep most of the time? Or were there emergencies right and left which they had to deal with, and which they did not call anyone about, and they did not have regulations to control? Yes, you can answer the question. There's no specific examples in the record. However, both the D.O.N., who actually served as a charge nurse at the facility, and the two LPNs that testified did say that if something took place, that they would have the authority to direct the CNAs on how to properly provide care. Thank you. Good morning, and may it please the Court. Megan Phillips for the National Labor Relations Board. The Board respectfully requests that this Court find that substantial evidence on the record supports the Board's finding that the Center, here Palmodo Prince George Operating Center, did not separate, did not satisfy its evidentiary burden in this case, and that this Court also enforce the Board's order in full, which requires the Center to recognize and bargain with the union. I'd also like to note that as this Court recognizes this case as a cross-appeal, I reserve five minutes of my argument time for rebuttal. Just as a brief overview, this case involves the alleged supervisory status of 23 charge nurses. There are 17 LPNs and 6 registered nurses. The Center generally provides long-term care as a nursing home. In addition to these 23 charge nurses, the nursing department also has 40 certified nursing assistants, or CNAs, three unit managers, the Assistant Director of Nursing, or the ADON, and the Director of Nursing, the DON, who testified at the hearing, that's Don Lambert. If the nurses were found to be 211 supervisors, then the ratio of supervisors to CNAs would be Although there are 11 indicia of supervisory status set forth in Section 211 of the Act, there are only two at issue here, whether the nurses discipline or effectively recommend discipline of CNAs using independent judgment, and whether the nurses responsibly direct the CNAs using independent judgment. Under this Court's precedent, the Board's finding that the Center did not prove by a preponderance of the evidence that the nurses exercised Section 211 authority to discipline or effectively recommend discipline of CNAs or to responsibly direct CNAs is supported by substantial evidence on the record. Tell us why the previous cases of Glenmark and Beverly Enterprises would not be applicable here. Well, Your Honor, I think in the first instance you don't have to modify those as I understand, if I read it incorrectly, that the Board's Oakwood decision in effect overrules Glenmark. I think that it definitely modifies, it definitely calls the analysis in those cases into question. I found that argument interesting because in the NLRB's Oakmont opinion, when it discusses independent judgment to the extent that it does, which seems to define it by use of examples on the extremes, as I read it, it cites the Glenmark opinion with approval as an example of that. Your Honor, it does cite Glenmark with approval for one point, that just because there are policies doesn't mean that independent judgment is not used. The Board was making a point in Oakwood that, you know, okay, you know, if we've got these policies, collective bargaining agreements, rules, directions from a higher level authority, which in this case would be, for example, whenever they have these mandatory in-service meetings where the director of nursing, the aid on, the unit managers are directing them to, hey, we need to look at this, for example, our gentle care policy or our policy on handwashing or something, that would be directions from a higher level authority. So the reason the Board is citing in Oakwood is citing Glenmark is just on that point. Yes, we recognize that courts have said that the existence of policies isn't the end story, but I would also like to point out in this case with regard to the evidentiary burden that the testimony is very conclusory, it's inconsistent, we don't have examples of what specifically they're doing. The center has relied... ...where the charge nurses initiated a disciplinary process, which I thought Glenmark said was sufficient, and the regional director's opinion said that effectively initiating the discipline was not sufficient without citing to Oakwood or the Kentucky River cases. So it looked like I'm not understanding why the regional director did that, and whether or not still is it the NLRB's position that Glenmark does not control here? I think that Glenmark does not control to the extent that the analysis conflicts with the Board's, and I don't think that you even need to get into that, to the extent that it conflicts with Oakwood, because as this Court said in its decision that was published in April, it was originally issued in December, Pactel, where the reasonableness of Oakwood before the Board or before the Court, which did not happen here. And in fact, in its reply brief, the center said, look, actually, these cases are right on point with Oakwood, but if you look back at this Court's cases, you can see that they're looking at the Board's former standard, which I believe was Providence Hospital. And the Board in those cases is looking at what the Board's standard is from Oakwood, because I'm not quite sure what that is or how that was identified in the briefs, because both Glenmark and Beverly Enterprises appear to be cases pretty close on point, involving the same industry, the same type of distinction between charge nurses and those that are under them. And since we have this precedent that appears to deal with the same situation, it seems like to me you have to give us a reason that Oakwood says that that precedent is no longer valid. I understand, Your Honor. So whenever the Board's standard at the time that this Court decided Glenmark and the Beverly cases, you had Beverly, Virginia and Beverly, West Virginia. But Beverly, Virginia is the longer case, and I believe it was on Bonk. That standard, again, Providence Hospital, and they were looking at whether they were using, you know, it was like incidental to their professional judgment, but... Okay. Okay. I can do that. Okay. I'm sorry, Your Honor. So the new standard is that the big one that applies here with regard to both responsible direction and discipline is that it has to involve independent judgment. This is the first time the Board, I mean, not the first time. I mean, the Board is, you know, as the center points out, this has been up to the Supreme Court. But, you know, as with Oakwood, every court that has addressed the issue has approved the Board's independent judgment standard, which is that, you know, if there's discretion involved, then it's not independent. I mean, that's independent judgment. But where it's controlled by policies, if you don't really have the discretion, everything, which the nurses do not have here, based on the reporting rule. Tell us why they don't have discretion. Because tell us why Glenmark, for instance, is different. Because the court said in Glenmark that they had discretion. There was no requirement that they report the same type of offenses that the employer has put in the record here to establish that this is, I mean, that's the only thing we have are Category 2s and 3s. And there is a rule saying, you know, in the employer's evidence, and this is the evidence the employer put in, the union had a few people testify, but it's the employer's burden, this is the employer's own evidence, like, okay, this is our progressive disciplinary policy. And the center does not say we don't have this rule. In fact, in its reply brief, they embrace it. The only difference is Okay. Okay. So there is It said that the judgment is not independent if what? Yes. Yes. And if it's, obviously, the statutory language also says, you know, clerical and non-routine as well. So if it's clerical and just routine, that's also not independent judgment. And here, I mean, not to bash, you know, what these CNAs are doing, but, and I, you know, this kind of goes into the point that the opposing counsel raised about coding. They're just bathing, you know, they're bathing, they're helping them to the restroom and everything. They're not really providing, like, medical care. Okay. Because Glenmark, in particular, went to the discipline phase of whether or not you're a line either in terms of what would happen to the employee. They initiated the process, which is, as I understand it, that's what happened in this case. But in this case, the only offenses that are on the record are Category 2s and Category 3s. And there's a rule requiring all employees. And the center does not rebut saying, oh, no, not all employees, you know, it's just the nurses that have to report that. If you do not report these Category 2 and Category 3 offenses, you are guilty of a Category 2, which puts you at a final written warning, ordinarily. And I will point out that based on the opposing counsel's argument in the brief, these do not automatically, you can't tell from the warning form necessarily, like, what discipline is given, what category of offense it is. In the reply brief, the opposing counsel states, oh, this has to be a Category 1 offense. So, look, we've got one Category 1 offense on the record of the three disciplinary actions. But does not even attempt to say what Category 1 offense that was. Acknowledges that there's no rule infraction listed, that there's no category checked on the form like there are on the others. And where it's ambiguous like that under board law, and I would say under this court's decision in Pactel, if, you know, if it's reasonable to view it as ambiguous, the center does not establish that it was a Category 1 offense that was presented. So, really, their entire case is, we think, that one Category 1 offense was reported. We acknowledge these other two were Category 2s and 3s, which everybody is required to report. The custodian in the building is required to report it. They have protocols that set out different phases of activities that are inappropriate for employees. You say, as a matter of law, that removes all discretion from the supervisor, whether they're a supervisor under, for NLRB purposes, not what I mean there, their supervisor simply has no discretion at that point in differentiating the types of offenses or whether it's risen to the point where a verbal counseling would be appropriate as opposed to a mandatory reporting. They have to report. It says the failure to report a Category 2 or a Category 3 offense results in a Category 2 No, it does not leave them any discretion. Sorry. I apologize. So, move to the direction part. You cited in your brief that there's no independent judgment for different items of care, providing improper resident care, turning or lifting a resident, providing neglectful or abusive care. But all of those of us who have had relatives in these facilities, there is a certain amount of medical judgment that goes into each one of those decisions. So I was a little mystified as to why you thought that was not the exercise of independent judgment. If they're required to do it by the policy. I mean, and that's the other point to be made here is, again, in the exercise of whatever judgment there is in those instances you cited in your brief, why do you say that's required by policy? How would the policy know when the nurse sees the patient and how the CNA is interacting with the patient, whether that's medically appropriate? What protocol is going to tell them that? Well, Your Honor, my response to that would be as it's the center's burden to establish that what discretion is involved there. If you look at the board's precedent and I know it's out of the circuit, that the 8th Circuit recent decision in Securitas, even whenever you think, oh, this is a nursing home, they've got these other things going on, if they don't, you know, I mean, even an incident that may not have occurred, you need to walk us through like what would happen in this incident, how they would do it. All that we've got is, yeah, they're responsible, which is the dictionary definition of responsible, or yeah, they direct, but we know that they've got policies. We know that this is a highly regulated industry. There are tons of state laws on this. We know just even from the few in-service notes that the employer put on the record that, you know, they do have this training and everything. And it was their burden, you know, they have to prove by the preponderance of the evidence that independent judgment is used. Board precedent and the precedent of other circuits, and I believe, you know, if you read into this court's recent published decision in Pactel, you do need to, you know, it is their burden to put forth. I'm asking you is that in the three examples that you gave in your brief, why would those instances not of necessity require independent judgment? Well, Your Honor, I noticed that I'm out of time, so I'd ask. Okay. We don't know what's involved in them, and it was the employer's burden to put that into evidence. Quite frankly, looking at this case as somebody who's briefing it, I obviously wasn't the hearing officer, but I don't even know exactly what they're doing in their day-to-day. The record is that sparse, and that's what makes this case difficult, because the employer's burden was to put on the evidence, they did not so. It is their burden to show that this is independent judgment. They need to, you know, even one instance, walk me through, walk me through how you assess abuse and neglect beyond what's in the policy. And we know they've got the policies, the required, you know, there's required reporting under the law, under state law for certain health care professionals, and that's not, I mean, that's not in the record. It's just very sparse responses to inclusory testimony, and the forms that they put in don't prove that. And it was their burden to establish it. Again, you don't, the board law and, you know, court-enforced board law is, and again, I point to Securitas, which was our 28-J letter. Even if you see, and in Securitas it was an industry, I believe, firemen, security, and everything, even if this is one where you would expect them to, you know, use independent judgment and discretion and everything, if there's no evidence of what they're doing within the record, the burden hasn't been established. I mean, it has not been satisfied. So what would it look like to establish this? What kind of evidence would have to be in the record? Rather than just saying we direct or, yeah, I respect, you know, give me an example of, okay, so if, you know, somebody was abusing a resident, how would you assess that? No, no, no, that's exactly it. They would need to walk you through, like, okay, so we, you know, yes, we have a policy on this, but beyond that, the nurse would have to do X, Y, Z. This is how they would assess it, and that's how something other than just non-routine things would come into effect. And I will point out, again, out of the circuit, certain things that are abuse and neglect, such as not bathing, not taking care of a resident and everything, you know, and that's defined under state law as you have to do that. That doesn't, you know, it doesn't take independent judgment to notice that somebody smells or that, you know, they weren't, that there is, you know, you know, they weren't wiped careful, you know, properly or they've got a rash or something. You can just tell, I mean, just a basic, you know, assessment of that. So you would think that you would need testimony from somebody or some sort of evidence that they exercised judgment that is not controlled by any rules, regulations, policies, training, et cetera, that they got. They weren't told what exactly they had to do in a given situation. Is that right? Exactly. And your representation to us is that there's no evidence like that in this record? My read of the record is that there is not. There's just, hey, they, you know, yes, they would be responsible whenever I'm gone, but that's just the dictionary definition of responsible. So your colleague is going to have a chance to come up and talk to us in a few minutes or give you one more chance to tell us about anything that she's going to point, be able to point to and say, is an exercise of independent judgment. But you stand by what you just said. I stand by it. I don't see anything where in the record, I mean, at least from my view, and I look through like all of these little scribbles on the handwritten notes and everything and the disciplinary record and everything and on these mandatory inservices. And again, the testimony was very conclusory. You know, they said, yes, you know, there was one example of like a fire drill or something or an emergency evacuation. But I believe the CNA, a former CNA, she had just taken a new position, had said, well, we know the drill. And in fact, we know from state law they're required to have these drills. They're required to have very detailed policies and everything. And, you know, to say where these residents are going, that's in the state law. Thank you very much. The board respectfully requests it to be affirmed in its order. Thank you. The board says that you have a failure of proof here. And then discipline, for instance, that this case is different from Glenmark because the reporting of discipline is, with one possible exception, all controlled by policy, that the charge nurses are mandated to report what they report, and that relieves them of discretion. So what's your response to that? That's misconstruing the evidence. As a matter of fact, there's two distinct issues here with respect to discipline. The first is it is a Category 2 violation if someone fails to report discipline. The reporting requirement that is set forth in the disciplinary policy is that someone with authority can take proper action to correct whatever situation is there. For instance, if a CNA witnesses another CNA not performing their job properly, they would have an obligation under the disciplinary policy to report that to their supervisor, i.e., to the charge nurse. At that point, the charge nurse would have an obligation to exercise their independent judgment to decide what the proper remedy to that information would be. Do they, A, decide to informally counsel the individual, or do they, B, initiate the disciplinary process by completing the disciplinary action form? The NLRB regional director kind of blurred the lines between these two issues. However, the fact that he found that the disciplinary action form is only completed by the charge nurses and upper management is evidence that that is not part of the reporting requirement, but instead part of the disciplinary process. If a CNA or some other employee, ranked less than the charge nurse, comes to the charge nurse and says, I witnessed this Category 2 or Category 3 offense as I see it, does the charge nurse at that point have any discretion as to whether or not to report that incident? Yes, Your Honor. As testified by the D.O.N. during the hearing, on two different occasions, both during direct and during cross-examination, at that point, the charge nurse would determine whether or not what was reported to her was sufficient enough to have a disciplinary action form. How does she determine that? Are there rules and regulations she looks to? There are not rules and regulations. No, there are no rules and regulations governing this. With respect to whether or not they initiate the disciplinary process? On how serious it is? Well, the disciplinary policy itself indicates how serious something is. Does that indicate to you then whether you would report it or not? The charge nurses have the discretion. And a good example of that, to answer your question, I would like to refer to the write-up of Shawanda Page, because in that instance, the charge nurse found Shawanda Page sleeping on the job. She did not. That's the only instance you have. It's the only example that was provided. But as your colleague has kept telling us about 400 times, and we really do understand it, it is your burden. It is our burden. And there was also testimony. The D.O.N. testified that the charge nurses Let's just generally say something. You have to sort of back it up with some evidence. Well, there were three different instances that were provided as examples of what happens with a disciplinary action form. Can we include the one you just mentioned about the person sleeping on the job? I'm sorry? The three examples? Yes. So what's your best other example of the exercise of independent judgment by a charge nurse in a disciplinary situation? Well, the other two situations are very similar that were reported. And in both those instances, CNAs were written up for failing to follow the instructions that were provided by the charge nurses. And in those instances, the charge nurses made a decision that because the individual failed to follow, they were going to write them up. And that documentation was provided along with the record. The consequence of what is being argued by the NLRB is that Let me ask you this, though. In those three examples, if the charge nurse had failed to make a disciplinary report, what would have been the consequences to the charge nurse? Well, that depends. If it was something that ultimately resulted in poor performance by the CNA, she would be held accountable. And there was exhibits provided in 14 as to two examples when this took place. When the direction either was not given or improper direction was given, the charge nurse was held accountable for failing to meet the performance expectations. How do you determine whether improper guidance was given? Your Honor, I have exceeded my time. Okay. Go look and see what the regulations are, right? Your Honor. I mean, is that wrong? Yes, it is. It is. You don't. You don't look at what the rules and regulations are, but you can say that charge nurses acted improperly. On what basis? It seems to me you have a number of really, really difficult labor problems. The rules and regulations lead to policies, and those policies dictate how patient health care should be implemented. The charge nurses have the responsibility of making sure that those policies are carried out on the floor with which they're charged responsibility. As for the citations to South Carolina regulations, ultimately those... I was talking about those. Okay. Okay. So those policies were governing. Those policies were governing, but Oakwood in footnote 43 relied on this circuit's case in Glenmark to say that that alone does not negate supervisory status. With that said, we respectfully request that this court refuse to initiate the order for collective bargaining and find that the charge nurses at the facility were supervisors both based on their authority to discipline and to responsibly direct the CNAs. Thank you. So what is your cross appeal? I was told at check-in that it was treated as a cross appeal and that we could reserve... Do you have something new to tell us? I did want to... If I may, I would like to address... Are you raising a separate issue? I don't understand what the cross appeal is. We're petitioning for enforcement. I was told at the check-in because I was going to do 20 minutes initially and didn't believe I... I apologize. Tell us what your point is. Okay. So a few points. As to the sleeping on the job incident, as you have recognized, Your Honor, that was one incident. She asked her to leave. And in fact, if you look at the notations on the write-up, and again, actually the nurse in that case did not fill out the DAR form. That was actually the one used by the witnesses was actually like some modified form where they crossed things out that was ordinarily used to report patient incidents. And they just wrote out what happened. Again, the case law said... Okay. So as to accountability, I would like to point out the one form as to the disallowing... to instructing this individual to give a suppository. It was a unit secretary. The very DAR form says this is a unit secretary. There is no assertion on the record that they direct or discipline unit secretaries. So that's not evidence of accountability here. The second one is ambiguous at best. It says employee must perform jobs. So we've got a nurse who, yes, they have these CNAs. They're the helper. They check off the list, okay, yeah, you bathed this person, whatever. But most this form is ambiguous, I would argue, based on it saying employee must perform job responsibilities. She's being disciplined for her own job responsibilities, which does not show accountability. Thank you very much. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, William B. Traxler, Jr., G. Steven Agee